**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

RUHI REIMER, individual and on
behalf of others similarly situated,

     Plaintiff,

v.                                                                      CASE No.

MEDIGAP LIFE, LLC,                          **CLASS ACTION**

     Defendant                                  **JURY TRIAL DEMANDED**


**Class Action Complaint**

1.     In 2021 alone, 2.8 million people signed up with the National Do Not Call Registry,
which now totals 246.8 million currently registered phone numbers. But despite the registry's
overwhelming popularity among consumers, telemarketers continue to bombard registrants with
illegal telemarketing. The Federal Trade Commission (FTC) received over 5 million Do Not Call
complaints in 2021.[1]

2.     The sheer volume of illegal telemarketing overwhelms the enforcement efforts of
government agencies such as the FTC and Federal Communications Commission (FCC).
Consequently, private consumer enforcements actions, authorized under both federal and Virginia
state law, play an indispensable role in combatting illegal telemarketing.

3.     Like millions of Americans and Virginians, Plaintiff Ruhi Reimer listed his
residential telephone number on the National Do Not Call Registry on September 20, 2008, thus
marking his number as "off-limits" for telemarketing sales calls or texts under state and federal

---

[1] FTC Issues Biennial Report to Congress on the National Do Not Call Registry, Federal Trade
Commission, https://www.ftc.gov/news-events/news/press-releases/2022/01/ftc-issues-biennial-
report-congress-national-do-not-call-registry

law. And like the millions of Americans and Virginians, he received unwanted telemarketing calls and texts anyway.

4.      Here, despite listing his number on the DNC Registry, Defendant, Medigap Life, LLC ("Medigap") placed at least eight calls to Mr. Reimer and sent one text message from seven different phone numbers in just over two months in an effort to sell insurance, all without prior express written consent. Plaintiff repeatedly told Medigap he was not the person Medigap intended to call, requested a copy of their written Do Not Call Policy, asked Medigap not to call him again, and asked Medigap to place him on its internal Do Not Call list. But Medigap did not heed any of Plaintiff's requests, and continued to call or text.

5.      Plaintiff brings this action under the federal Telephone Consumer Protection Act (TCPA) and the Virginia Telephone Privacy Protection Act (Va. Code Ann. §59.1, et al) (VTPPA) on behalf of Classes of consumers who, like him, received Medigap telemarketing calls (1) despite listing their numbers on the DNC Registry, and (2) despite specifically telling Medigap telemarketers to stop calling, (3) without identifying the caller by first and last name and seek to enforce his rights under state and federal law and deter Medigap from future illegal conduct.

6.      Class action procedures are especially appropriate to enforce the TCPA and related state consumer protection laws. This is especially true when dealing with unwanted robocalls that so many Americans receive. As the Fourth Circuit explained, statutes of this ilk offer "simple and administrable" provisions, demonstrate the "obvious attempt [by the legislatures] to vindicate the public interest" through the statutes' private enforcement provisions, and support the overarching congressional intent "to allow consumers to bring their claims at modest personal expense," which all combine to "make TCPA [and VTPPA] claims amenable to class action resolution." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 663 (4th Cir. 2019).

**Parties**

7.      Plaintiff, Ruhi Reimer, is a natural person who owns a Virginia-based phone number and a Virginia resident during the phone calls. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39), and was the subscriber for the residential cellular telephone number at issue.

8.      Medigap Life, LLC, is a Florida Limited Liability Company with its principal place of business at 1900 N.W. Corporate Blvd., Suite W300, Boca Raton, Florida.

**Jurisdiction and Venue**

9.      This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. because this action alleges violations of the Telephone Consumer Protection Act. regarding Plaintiff's TCPA claims. *Mims v. Arrow Financial Servs.*, 565 U.S. 368, 372 (2012). The state law claims arise from the same set of facts and circumstances as the federal claims. Indeed, they are based upon the same illegal telephone calls and text message.

10.     Additionally, the Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. 1332(d)(2).  The amount in controversy exceeds $5,000,000 in the aggregate, exclusive of interest and costs, as each member of the proposed Classes of at least tens of thousands is entitled to up to $1,500 in statutory damages for each call that has violated the TCPA.  Further, Plaintiff alleges nationwide Classes, which will result in at least one member of each Class residing in a state different from Defendant.

11.     Defendant is subject to personal jurisdiction in Virginia because Medigap conducts business in this District, caused the calls that are the subject of this lawsuit to be made into this District, and because a substantial portion of the events giving rise to this action occurred in this District and relate to Defendant's contacts with this state.

12.     Venue is proper appropriate in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including Defendant's purposeful efforts to generate business and sell insurance in this district through illegal telemarketing.

**Statutory Background**

13.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

14.     The TCPA was enacted in response to widespread public outrage over the proliferation of intrusive, nuisance calling practices. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

15.     Perhaps the most well-known aspect of the TCPA was the creation of the National Do Not Call Registry. By adding a telephone number to the Registry, a consumer indicates her desire not to receive telephone solicitations. See 47 C.F.R. § 64.1200(c)(2).

16.     The TCPA and its implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry.  47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2). *see Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the [TCPA].").

17.     The TCPA also requires companies to maintain internal do-not-call lists. The TCPA's regulations provide that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on

behalf of that person or entity." 47 C.F.R. § 64.1200(d). Such procedures must meet specific minimum standards, delineated in the regulation. Moreover, the FCC held long ago that internal do-not-call requests must be tracked and honored among and between a seller and its various telemarketers:

> Once the consumer makes a company specific do-not-call request, whether to the company or third party, the company and its third-party telemarketer may not call the consumer again on behalf of that company to make a telephone solicitation regardless of whether the consumer continues to do business with the company.

*In re TCPA,* 20 FCC Rcd. 13664, 13668 ¶ 7 (2005); *accord U.S. v. Dish Network, LLC*, 954 F.3d 970, 976 (7th Cir. 2020) (holding that sellers and their telemarketers must "coordinate" internal DNC lists under the FTC's Telemarketing Sales Rule, which is substantially identical to the TCPA); *cf.* 47 C.F.R. § 64.1200(d)(6) (DNC requests "must be honored for 5 years").

18.    The TCPA says that "the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do not call request," 47 C.F.R. § 64.1200(d)(3), and prohibits all telemarketing calls unless there is an instituted, written policy reasonably designed to prevent calls to those who request not to receive them (i.e., members of the Classes herein).

19.    The TCPA's internal do-not-call rules require that sellers and their telemarketers honor consumer requests not to receive telemarketing calls. 47 C.F.R. § 64.1200(d). Any request not to be called must be shared among the seller, i.e., Medigap, and any entities that generate business for the seller through outbound calls. In other words, a request to one vendor must be "coordinated" so as to prevent all telemarketing calls on behalf of that seller. *In re TCPA*, 20 FCC Rcd. 13664, 13664-65 ¶ 1 (2005).

20.     In addition to the protections and recourse available under the TCPA, Virginia, which does not recognize a common law cause of action for invasion of privacy or intrusion upon seclusion, saw fit to provide its residents additional protections from unwanted telemarketers. *Cavey v. MarketPro Homebuyers, LLC*, 542 F. Supp. 3d 418, 424 (E.D. Va. 2021), appeal dismissed, No. 21-1801, 2021 WL 6689144 (4th Cir. Oct. 12, 2021).

21.     More specifically, the Virginia State Legislature saw fit to provide additional protections against illegal telemarketing and enacted the Virginia Telephone Privacy Protection Act ("VTPPA"), which establishes state-law causes of action for illegal calls or text messages made to individuals registered on the National Do Not Call list. Va. Code. Ann. § 59.1-514.

22.     The Amendments, signed into law by Governor Ralph Northam in 2020, sought to increase the VTPPA's protections and did so in several ways, not the least of which was broadening the definition of a "telephone solicitation call" to not only include calls to residential and cellular telephone lines, but to include text messages as well.

23.     With the ever-growing harassment consumers face with the proliferation of ceaseless telephone solicitations, the Virginia legislation armed its residents with an additional weapon to combat unwanted telephone solicitations; civil penalties in the amount of $500 for a first violation, $1,000 for a second violation, and $5,000 for each subsequent violation. Va. Code. Ann. §59.1-517.

24.     If the Court finds that a solicitor has willfully violated the statute, the Court has the discretion to grant an award of up to $5000 per violation.

**Facts**

25.     Medigap sells health insurance to fill "gaps" in one's Medicare coverage.

26.     Medigap makes telemarketing calls to sell its products.

6

27.     Plaintiff had no connection or communication with Medigap prior to the calls and text message.

28.     Medigap did not have Plaintiff's prior express written consent to call him.

29.     Plaintiff and Medigap do not have an established business relationship.

30.     Over a period of 77 days starting February 8, 2022, Plaintiff received eight phone calls from six phone numbers, and one text message from a seventh phone number.

31.     Each call or text message was apparently intended for a person named "Rob." Plaintiff is neither "Rob" nor does he know the "Rob" Medigap intended to call.

32.     Plaintiff informed Medigap he was not "Rob" six different times.

33.     But despite communicating this Medigap, Medigap continued to called Plaintiff and ask for "Rob." Not until Plaintiff responded "STOP" to Medigap's text message (its last communication with Plaintiff) did he stop receiving calls or texts.

34.     Plaintiff first received a telemarketing call from Medigap on **February 8, 2022 at 10:57 AM** from the phone number **240-213-5035**, but he did not answer. Plaintiff called this number back and discovered the call was from Medigap.

35.     Plaintiff received a second telemarketing call from Medigap on **February 8, 2022 at 11:28 AM** from the second phone number **513-822-2027**, but he did not answer. Plaintiff called this number back and discovered the call was from Medigap.

36.     Plaintiff first answered a telemarketing call from Medigap on **February 18, 2022** from the third phone number **667-255-0489**. When Plaintiff answered, there was call center noise in the background, and a Medigap agent named "Winston" asked to speak with "Rob." After Plaintiff asked who was calling, "Winston" stated he was calling about Plaintiff's "Medicare benefits," claiming Medigap would "be providing additional benefits and extra savings that you

might be entitled to." Plaintiff said, "this is not Rob, but what is this about?" Winston did not answer Plaintiff's question, but instead said, "Oh, I see, I'm sorry, have a great day," and immediately hung up.

37.     Plaintiff answered another telemarketing call from Medigap on **March 1, 2022** from the phone number **667-255-0489**. When Plaintiff answered, a Medigap agent whose name was inaudible asked to speak with "Rob." The agent advertised Medigap's "Medicare benefits" to Plaintiff. Plaintiff stated he was "not Rob" and asked what the call was about. The agent said, "Rob is not available?" Plaintiff said, "No, there is no Rob here," and the agent immediately hung up the phone.

38.     Plaintiff answered another telemarketing calls from Medigap on **March 16** from the phone number **667-255-0489**. When Plaintiff answered, there was call center noise in the background, and again the Medigap agent asked to speak with "Rob." The agent, whose name was inaudible, stated he was "calling on behalf of Medigap Life," that the call was "in reference to your new Medicare benefits." Plaintiff said that he was "not Rob," and asked why he was getting the call. The agent asked whether it was a wrong number. Plaintiff asked for Medigap's website and company name, which the agent provided. Plaintiff then asked the agent for Medigap's do not call policy. The agent asked whether Plaintiff wanted to be put on the do not call list, but Plaintiff clarified, stating he wanted Medigap's do not call *policy*.  But the agent directed Plaintiff to Medigap's website instead. Plaintiff then stated "Okay, this is not Rob, and I did not request this call," and the call ended.

39.     Plaintiff answered another telemarketing call from Medigap on **March 24, 2022** from the fourth different phone number **240-201-7516**. When Plaintiff answered, a Medigap agent named "Makayla" asked for "Rob." Plaintiff asked who was calling, to which "Makayla"

responded, "Am I speaking with Rob?" Plaintiff asked again "Maykayla" to "identify [her]self." The agent finally stated that she was with Medigap Life and that she was calling "in reference to your Medicare health plan," and that Plaintiff was "qualified to receive those increased benefits and savings that [Plaintiff] might get at no cost." She then asked Plaintiff to "confirm he was in Medicare A & B." Plaintiff responded that he is not enrolled in Medicare and that he was not "Rob." Plaintiff also asked the agent how he could obtain Medigap's do not call policy that Medigap was required by law to provide, and asked for Medigap's mailing address. But instead of answering the questions, the agent said, "If this is the wrong number, sir, I will just note it on my end, *you won't receive any call again*." Plaintiff insisted that Medigap provide its do not call policy and asked how he could request it by mail. But again "Makayla" dodged the question, stating "I will just note it on my end, okay?" Plaintiff insisted a second time, but again "Makayla" dodged the question and stated she would fix it. But Plaintiff persisted, stating he wanted to send Medigap a letter. But Makayla said, "You can call us next, sir, in regards with that." But Plaintiff stated he did not want more calls. Then, after Plaintiff asked for Medigap's address again, the agent admitted she did not have an address, and asked if she could call Plaintiff back, to which Plaintiff responded, "No, no more calls." Plaintiff asked to speak with the manager, the agent said she would "note it on my end," and hung up.

40.     Despite informing Medigap *four different times* that he was not Rob, despite telling Medigap agent "Makayla" that he did not want more calls and that he was *not even a Medicare customer*, and despite explicit assurances from Medigap agent "Makayla" that Plaintiff would not receive any more calls, Medigap again called Plaintiff on **April 1, 2022**, this time from the fifth different number **443-305-5918**. When Plaintiff answered, a Medigap agent named "George" asked for "Rob." "George" said he was from "Medigap Life." Plaintiff asked what the call was

about, to which "George" responded parroting previous agents, the call was "all about additional benefits and savings that he's entitled to receive at no additional cost." Plaintiff asked "George" how he could request Medigap's do not call policy. But like "Makayla" before, "George" said, "I can put you on our do not call list." Plaintiff requested a written copy. "George" said he could only do that with a "licensed agent," and assured Plaintiff he would "just talk to them about that." Plaintiff assumed "George" was transferring him to this "licensed agent," but "George" said, "No, I will just talk to them for you, okay?" and immediately hung up.

41.     Medigap again called Plaintiff on **April 13, 2022** from the sixth different number **240-384-6455**. This time, however, after several seconds of dead air with no live agent, the call was abandoned.

42.     Later that day, Plaintiff called back the number **240-384-6455**. The call was answered by a Medigap agent named "Jane," who informed Plaintiff that one of Medigap agents called him, and then immediately started pitching Medigap's services. Like previous Medigap agents, "Jane" said Medigap was "trying to reach out in reference to your Medicare benefits to provide you additional benefits and savings that you might be entitled to at no additional cost." Plaintiff asked "Jane" if Medigap had called his number, but "Jane" said that she didn't have access to that record because it was from another agent, and then, unprompted, started pitching Medigap product and services again.

43.     Plaintiff then asked if Medigap had a number he could call her back on. "Jane" stated the number as 855-997-7001. Plaintiff asked if he should ask for "Jane" when he calls. "Jane" responded, "Alright, thank you so much for the call, and have a great day," and tried to hang up. But Plaintiff quickly interjected, and asked "Jane" how he would request Medigap's do not call policy. *But instead of answering the question*, "Jane" said, "Oh yeah, after this call, we

can put this number in the do not call list." Plaintiff confirmed that he wanted her to do that, but continued to ask how he would get a copy of Medigap's do not call policy. "Jane" did not answer, stating only that it would "take 24 to 48 hours before it will permanently deleted in our system." Plaintiff said, "Just to be clear, you cannot give me a copy of your do not call policy," to which "Jane" said, "Yeah," and the call ended.

44.     Medigap sent Plaintiff the text message below on **April 26, 2022**, from the seventh different number **844-932-4144**:



45.     Plaintiff texted back STOP.

46.     During each call, Medigap did not identify itself on the Caller ID even though Plaintiff authorized his carrier to pass such information.

47.     During each call, the Medigap read from a script, saying some version of "we are trying to reach out in reference to your Medicare benefits to provide you additional benefits and savings that you might be entitled to at no additional cost."

48.     On four different occasions, Plaintiff asked the Medigap agent how he could obtain Medigap's do not call policy but each time the agent dodged the question by only saying they would place Plaintiff on Medigap's do not call list — which, of course, they never did.

49.     During each call or text message, the calling agent was the agent of Medigap Life, LLC.

50.     During each call or text message, the agent offered or advertised Medigap's goods or services; that is, "gap" insurance policies for Medicare beneficiaries.

51.     Advancements in telemarketing technology enable Medigap to call individuals at massive scale for little cost.

52.     Medigap changed its incoming phone numbers and does not transmit its identity to the caller ID of call recipients so they do not know Medigap is calling.

53.     Plaintiff is just one of many other individuals who have received telemarketing calls from Medigap despite having their numbers on the National Do Not Call registry and giving not prior express written consent.

54.     Plaintiff told the telemarketer that he was interested in hearing more about the insurance offerings being solicited.

55.     Medigap made these calls and text fully aware of laws prohibiting them.

56.     Medigap's calls to Plaintiff show it does not have adequate or reasonable policies in place to prevent illegal telemarketing.

57.     Plaintiff received these improper calls as a direct result of Defendant's failure to maintain company-specific internal do not call policies, practices, and procedures that satisfy the requirements of the TCPA.

58.     Because Defendant's policies, practices, and procedures do not comply with the TCPA, there are undoubtedly others who, like Plaintiff, have received telemarketing calls by or on behalf of Defendant, after they requested not to receive such.

59.     A telemarketing call to sell insurance is the type of interaction where the caller customarily carries authority act on behalf of the insurance company principal by, for example, marketing, writing, and selling insurance policies.

60.     Defendant either lacks an internal do-not-call policy or knows or should have known that its internal do-not-call policies fail to ensure its agents or vendors comply with Medigap's internal do-not-call list. Defendant thus knew or should have known that Plaintiff was likely to receive additional calls on its behalf from Medigap or its vendors and telemarketers. Medigap also knows that their internal DNC policies do not comply with the TCPA. Nevertheless, Defendant has not changed its policies, practices, or procedures to bring them into compliance on this point.

61.     Defendant had the ability to control the minutiae of its and its vendors' internal DNC compliance, but recklessly or knowingly failed to do so, instead electing to turn a blind eye and accept the illegal sales calls.

62.     Defendant also knows or should have known that it or its vendors generally do not mention their names during calls. Upon information and belief, Defendant prohibits most or all

telemarketers and lead generator vendors from mentioning their names in marketing solicitations like those the Plaintiff and the members of the Classes received.

63.     Vicarious liability is an essential feature of the privacy-protecting provisions of the TCPA. Under applicable law, a seller like Medigap is not shielded from liability simply because others violate the law on its behalf and for its benefit. This is so in part because the dealers and lead generators that place illegal calls often are judgment proof and difficult to identify, and sellers like Medigap are best positioned to monitor and control their activities. Under these circumstances, and in service of protecting consumers from the nuisance of unwanted telemarketing, liability is imputed to the more reputable and more financially solvent sellers — here, Medigap.

64.     Because allowing an entity "to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions," the FCC has consistently held that a corporation or other entity "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6574 (1) (2013) ("May 2013 FCC Ruling"); *see also Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 659-661 (4th Cir. 2019) (affirming class certification and jury finding that Dish Network was vicariously liable for violations of federal do not call law committed by its dealer).

65.     And even if Medigap did have adequate or reasonable policies in place to prevent illegal telemarketing, its calls and text to Plaintiff show it did not follow them.

66.     Plaintiff and the members of the Classes were injured by Medigap because they were forced to deal with telemarketing calls and texts they did not consent to and affirmatively

requested not to receive.  Each call or text invaded Plaintiff and Class members' privacy, their phones were temporarily seized and trespassed on the legitimate use of their phones, and the calls were a nuisance, annoying, wasted time, and represent a public safety threat.

67.     These injuries are directly traceable to Medigap's calls to Plaintiff.

68.     These injuries are redressable through a favorable decision, both through money damages and injunctive relief.

## Class Action Allegations

69.     As authorized by Rule 23(b)(3) and 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the following Classes:

**Telephone Consumer Protection Act – National Do Not Call Registry Class:**
All persons in the United States (1) whose telephone numbers were on the National Do No Call Registry for at least 31 days, (2) but who received more than one telemarketing call from, or on behalf of, Medigap within a 12-month period, (3) to sell Medigap products or services, (4) from four years before the filing of the Complaint.

**Telephone Consumer Protection Act – Internal Do Not Call Class:**
All persons in the United States (1) to whom more than one call was made for the purpose of encouraging the purchase of Medigap goods or services (including to find a marketing "lead" for Medigap goods or services) in any 12-month period since the date four years prior to the filing of this action, (2) to a residential telephone number, (3) where the phone number was on Medigap's do-not-call list at the time of at least one such call.

**Virginia Telephone Privacy Protection Act – National Do Not Call Registry Class:**
All natural persons residing in Virginia and all natural persons with cellular telephones with a Virginia area code whose (1) telephone numbers were on the National Do No Call Registry for at least 31 days, (2) but who received more than one telemarketing call from, or on behalf of, Medigap within a 12-month period, (3) to advertise or offer Medigap products or services, (4) from two years before the filing of the Complaint.

**Virginia Telephone Privacy Protection Act – National Unidentified Caller Class:**
All natural persons residing in Virginia and all natural persons with cellular telephones with a Virginia area code whose (1) to whom more than one call was made for the purpose of encouraging the purchase of Medigap goods or services (including to find a marketing "lead" for Medigap goods or services) (2) in which the caller did not identify themselves by first and last name (3) from two years before the filing of the Complaint.

70.     Upon information and belief, Medigap made calls and text messages to putative class members like those it made to Plaintiff, including the same sales script, number changing regime, failure to transmit identify to caller ID, refusal to provide do not call policy, and failure to honor request to stop calling. The members of the Classes, therefore, are believed to be so numerous that joinder of all class members is impracticable.

71.     During each call to putative class members advertised or offered Medigap's goods or services; that is, "gap" insurance policies for Medicare beneficiaries.

72.     Plaintiff is a member of each putative class, has no interests that conflict with the putative class members, and will fairly and adequately represent and protect the interests of each putative class.

73.     Excluded from the classes are counsel, Medigap, and any entities in which the Medigap has a controlling interest, Medigap's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

74.     The proposed class members are identifiable through dialer records, phone records, and phone number databases that will be obtained through discovery.

75.     Putative class members likely number in the hundreds of thousands. Individual joinder is thus impracticable.

76.     Common questions of law or fact exist as to all members of the putative classes, and predominate over questions solely affecting any individual putative class member, including Plaintiff.  Such common questions include, but are not limited to:

     a.     Whether Medigap made multiple calls to numbers on the National Do Not Call registry;

     b.     Whether the calls were placed without obtaining the recipients' valid prior express written consent;

     c.     Whether the Medigap's agents placed more than one call within a 12-month period to numbers on the Do Not Call Registry;

     d.     Whether under the TCPA, Plaintiff and putative class members are entitled to statutory damages because of the Medigap's actions;

     e.     Whether Medigap's conduct was negligent, willful, or knowing, and thus subject to treble damages under the TCPA;

     f.     Whether under the VTPPA, Plaintiff and putative class members are entitled to $500.00 for the first violation, $1,000.00 for the second violation, and $5,000 for each subsequent violation.

77.     Plaintiff's claims are typical of the claims of putative class members. The factual and legal bases of Medigap's liability to Plaintiff and the other Class members are the same: Medigap violated the TCPA and VTPPA by calling and texting without prior express written consent even though Plaintiff and putative class members were on the National Do Not Call registry.

78.     The only individual question concerns identification of class members, which is ascertainable from call records obtained in discovery and from reliable databases.

79.     Class action treatment is superior to all other alternatives for the fair and efficient adjudication of the controversy alleged. Such treatment will permit a large number of similarly

situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

80.     The likelihood that individual putative class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case and given the small recoveries available through individual actions.

81.     Plaintiffs are not aware of any litigation about this controversy already commenced by others who meet the criteria for class membership described above.

**Legal Claims**

**Count I**
**Violations of the TCPA, 47 U.S.C. § 227**
**(National Do Not Call Registry Violations)**

82.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

83.     It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

84.     Defendant violated the TCPA by causing multiple telephone solicitations to be initiated to Plaintiff and the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

85.     Defendant also violated the TCPA by failing to adhere to its own policies concerning DNC.

86.     These violations were willful or knowing.

87.     As a result of Defendant's violations of the TCPA's national do-not-call rule, Plaintiff and the other members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

88.     Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

WHEREFORE, Plaintiff Ruhi Reimer, individually and on behalf of the National DNC Class, respectfully requests that the Court enter judgment against Defendant for:

A.     Certification of the National DNC Class as alleged herein;

B.     Damages, pursuant to 47 U.S.C. § 227(c)(5);

C.     Injunctive relief, pursuant to 47 U.S.C. § 227(c)(5), aimed at ensuring the prevention of TCPA violations in the future;

D.     Attorneys' fees and costs, as permitted by law; and

E.     Such other or further relief as the Court deems just and proper.

## Count II
### Violations of the TCPA, 47 U.S.C. § 227
### (Internal Do-Not-Call Violations)

89.     Plaintiff re-alleges and incorporates the foregoing allegations in paragraphs 1–81 as if fully set forth herein.

90.     The TCPA requires any party that is engaged in telemarketing — including "sellers" who do not make calls themselves — to maintain and honor a written internal do-not-call policy.

91.     Defendant's written do not call policy, as well as its procedures, are insufficient to ensure compliance with the TCPA's internal Do Not Call rules.

92.    Defendant's policy and procedures permit calls to phone numbers that are on the internal DNC list, if the caller has "consent."

93.    Defendant's policy and procedures do not provide for coordination of internal DNC lists among telemarketing or lead vendors, or between the Defendant, and no coordination takes place.

94.    Defendant's policy and procedures do not call for TCPA or IDNC training.

95.    Telemarketing calls made by or on behalf of Defendant are often spoofed and fail to properly identify Defendant or provide valid contact information.

96.    Defendant violated the TCPA by not having sufficient internal DNC policies, by not following or honoring the policies that they did have, and/or by not sufficiently ensuring that those making the calls on its behalf did the same.

97.    Plaintiff and Class members each received more than one call in violation of these rules within a twelve-month period, and a cause of action under 47 U.S.C. § 227(c)(5) has therefore accrued.

98.    As a result of these violations, Plaintiff and the TCPA IDNC Class were damaged by Defendant's violations, in that they received non-privileged and unsolicited telemarketing calls that invaded their privacy, after having requested that calls stop.

99.    The section of the TCPA that confers a private right of action specifically allow for money damages, injunctive relief, or "both." 47 U.S.C. § 227(c)(5).

WHEREFORE, Plaintiff Ruhi Reimer, individually and on behalf of the TCPA IDNC Class, respectfully requests that the Court enter judgment against Defendant for:

A.      Certification of the TCPA IDNC Class as alleged herein, and the appointment of Plaintiff as the representative of the TCPA IDNC Class and Plaintiff's counsel as Counsel for the TCPA IDNC Class;

B.      A declaration that Defendant violated the TCPA as to Plaintiff and the TCPA IDNC Class;

C.      An injunction to prevent further violations;

D.      Damages pursuant to 47 U.S.C. § 227(c)(5), as applicable;

E.      Costs, expenses, and attorneys' fees, to the extent permitted by law; and

F.      Such other or further relief as the Court deems just and proper.

**Count III**
**Violations of the VTPPA, Va. Code. Ann. § 59.1-514**
**(Do-Not-Call Registry Violations)**

100.    Plaintiff re-alleges and incorporates the foregoing allegations in paragraphs 1–81 as if fully set forth herein.

101.    The VTPPA prohibits a "telephone solicitor" from "initiat[ing], or caus[ing] to be initiated, a telephone solicitation call to a telephone number on the National Do Not Call Registry maintained by the federal government pursuant to the Telemarketing Sales Rule, 16 C.F.R. Part 310, and 47 C.F.R. § 64.1200." Id.

102.    A "telephone solicitor" is defined as "any person who makes or initiates, or causes another person to make or initiate, a telephone solicitation call on its own behalf or for its own benefit or on behalf of or for the benefit of a seller." § 59.1-510.

103.    A "telephone solicitation call" is defined as:

a.      "[A]ny telephone call made or initiated to any natural person's residence in the Commonwealth, to any landline or wireless telephone with a Virginia area code, or to

21

a landline or wireless telephone registered to any natural person who is a resident of the Commonwealth," or

      b.    "[A]ny text message sent to any wireless telephone with a Virginia area code or to a wireless telephone registered to any natural person who is a resident of the Commonwealth, for the purpose of offering or advertising any property, goods, or services for sale, lease, license, or investment, including offering or advertising an extension of credit or for the purpose of fraudulent activity, including engaging in any conduct that results in the display of false or misleading caller identification information on the called person's telephone."

104.    Statutory damages apply when "[a]ny natural person who is aggrieved by a violation of this chapter shall be entitled to initiate an action against any responsible person to enjoin such violation and to recover from any responsible person damages in the amount of $500 for a first violation, $1,000 for a second violation, and $5,000 for each subsequent violation." § 59.1-515.

105.    "If the court finds a willful violation, the court may, in its discretion, increase the amount of any damages awarded for a first or second violation under subsection A to an amount not exceeding $5,000." *Id.*

106.    Further, "reasonable attorney fees and court costs" are also available under the VTPPA. *Id.*

107.    The VTTP provides for a rebuttable resumption that "[a] telephone solicitation call offering or advertising a seller's property, goods, or services shall be presumed to have been made or initiated on behalf of or for the benefit of the seller, whether or not any agency relationship exists between the telephone solicitor and the seller, whether or not the seller supervised or directed

22

the conduct of the telephone solicitor, and whether or not the telephone solicitor is shown to have acted at the seller's direction and request when making or initiating the telephone solicitation call." § 59.1-514.1.

108.   "The presumption may be rebutted if it is shown by clear and convincing evidence that the seller did not retain or request the telephone solicitor to make telephone solicitation calls on the seller's behalf or for the seller's benefit and that the telephone solicitation calls offering or advertising the seller's property, goods, or services were made by the telephone solicitor without the seller's knowledge or consent." *Id.*

109.   Also, the VTPPA provides for joint and severally liability for a "seller on whose behalf[,] or for whose benefit[,] a telephone solicitor makes or initiates a telephone solicitation call in violation of any provision of § 59.1-511, 59.1-512, 59.1-513, or 59.1-514 (*see* above) and the telephone solicitor making or initiating the telephone call shall be jointly and severally liable for such violation." §59.1-514.1.

110.   And the VTPPA does not "limit any remedies, causes of action or penalties available to any person or governmental agency under any other federal or state law." §59.1-518.

WHEREFORE, Plaintiff Ruhi Reimer, individually and on behalf of the VTPPA DNC Class, respectfully requests that the Court enter judgment against Defendant for:

A.   Certification of the VTPPA DNC Class as alleged herein, and the appointment of Plaintiff as the representative of the VTPPA DNC Class and Plaintiff's counsel as Counsel for the VTPPA DNC Class;

B.   A declaration that Defendant violated the VTPPA as to Plaintiff and the VTPPA DNC Class;

C.   An injunction to prevent further violations;

D.      Damages pursuant to Va. Code. Ann. § 59.1-517, as applicable;

E.      Costs, expenses, and attorneys' fees, to the extent permitted by law; and

F.      Such other or further relief as the Court deems just and proper.

**Count IV**
**Violations of the VTPPA, Va. Code. Ann. § 59.1-512**
**(Solicitor Identification Violations)**

111.    Plaintiff re-alleges and incorporates the foregoing allegations in paragraphs 1–81 as if fully set forth herein.

112.    The VTPPA requires any "telephone solicitor" who makes a "telephone solicitation call" to identify themselves by their "first and last names and the name of the person on whose behalf the telephone solicitation call is being made promptly upon making contact with the called person." Va. Code Ann. §59.1-512.

113.    Defendant violated the VTPPA by failing to identify the first and last name of senders of solicitating telephone calls and soliciting text messages.

114.    Medigap, as a telephone solicitor itself or jointly and severally through telephone solicitors acting for its benefit, is liable for telephone solicitations that violate the VTPPA.

115.    And the VTPPA does not "limit any remedies, causes of action or penalties available to any person or governmental agency under any other federal or state law." §59.1-518.

WHEREFORE, Plaintiff Ruhi Reimer, individually and on behalf of the VTPPA DNC Class, respectfully requests that the Court enter judgment against Defendant for:

A.      Certification of the VTPPA Unidentified Sender Class as alleged herein, and the appointment of Plaintiff as the representative of the VTPPA Unidentified Sender Class and Plaintiff's counsel as Counsel for the VTPPA DNC Class;

B.      A declaration that Defendant violated the VTPPA as to Plaintiff and the VTPPA Unidentified Sender Class;

C.      An injunction to prevent further violations;

D.      Damages pursuant to Va. Code. Ann. § 59.1-517, as applicable;

E.      Costs, expenses, and attorneys' fees, to the extent permitted by law; and

F.      Such other or further relief as the Court deems just and proper.

## Prayer for Relief

WHEREFORE, Plaintiff, individually and on behalf of the putative Classes, prays for the following relief:

A.      Injunctive relief prospectively prohibiting Medigap from calling or texting telephone numbers advertising their goods or services, except for emergency purposes, to a number on the National Do Not Call Registry without prior express written consent;

B.      That the Court enter a judgment awarding Plaintiff and all putative class members statutory damages of $500 for each violation of the TCPA, and if made knowingly and willfully, $1,500 for each such violation; and

C.      That the Court enter a judgment awarding Plaintiff and all putative class members $500 for the first violation of the Virginia Telephone Privacy Protection Act, $1,000 for the second violation, $5,000 for each subsequent violation, and if made knowingly and willfully, $5,000 for each such violation.

D.      Attorney fees and costs.

## Jury Demand

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: May 24, 2023

Respectfully submitted,


*/s/ Gregory Y. Porter*
Gregory Y. Porter (VA Bar No. 40408)
John W. Barrett (seeking *Pro Hac Vice*)
Panida A. Anderson (seeking *Pro Hac Vice*)
BAILEY & GLASSER LLP
1055 Thomas Jefferson St. NW, Suite 540
Washington, DC 20007
Telephone: 202.548.7790
Facsimile:  202.463.2103
GPorter@baileyglasser.com
JBarrett@baileyglasser.com
PAnderson@baileyglasser.com


*/s/ William "Billy" Peerce Howard*
William "Billy" Peerce Howard, Esq. (seeking *Pro Hac Vice)*
Florida Bar No. 0103330
THE CONSUMER PROTECTION FIRM, PLLC
401 East Jackson Street, Suite 2340
Truist Place
Tampa, FL  33602
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Billy@TheConsumerProtectionFirm.com
*Attorney for Plaintiff*

## **Document Preservation Demand**

Plaintiff demands that Defendant take affirmative steps to preserve all recordings, data, databases, call records, consent to receive autodialed or artificial or prerecorded voice calls, e-mails, recordings, documents, and all other tangible things that relate to the allegations herein, Plaintiff, or the putative class members, or making telephone calls, the events described herein, any third party associated with any telephone call, campaign, account, sale, or file associated with Plaintiff or the putative class members, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of Defendant.

/s/ Gregory Y. Porter
Gregory Y. Porter (VA Bar No. 40408)
John W. Barrett (seeking *Pro Hac Vice*)
Panida A. Anderson (seeking *Pro Hac Vice*)
BAILEY & GLASSER LLP
1055 Thomas Jefferson St. NW, Suite 540
Washington, DC 20007
Telephone: 202.548.7790
Facsimile:  202.463.2103
GPorter@baileyglasser.com
JBarrett@baileyglasser.com
PAnderson@baileyglasser.com


/s/ William "Billy" Peerce Howard
William "Billy" Peerce Howard, Esq. (seeking *Pro Hac Vice)*
Florida Bar No. 0103330
THE CONSUMER PROTECTION FIRM, PLLC
401 East Jackson Street, Suite 2340

Truist Place
Tampa, FL  33602
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Billy@TheConsumerProtectionFirm.com
*Attorney for Plaintiff*