UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| RUHI REIMER<br><br>  Plaintiff,<br><br>v.<br><br>MEDIGAP LIFE, LLC,<br><br>  Defendant. | Civil Case No.: 1:23-cv-00683-MSN-JFA |

**PLAINTIFF RUHI REIMER'S RESPONSE IN OPPOSITION TO
DEFENDANT MEDIGAP LIFE, LLC'S MOTION FOR SPOLIATION SANCTIONS**

**Summary of Argument**

In this telemarketing case, defendant Medigap Life, LLC ("Medigap") made repeated phone calls advertising its services to plaintiff Ruhi Reimer in the spring of 2022, notwithstanding Mr. Reimer's placement on the National Do Not Call Registry. Following the course of most defendants in TCPA litigation, Medigap asserts that Mr. Reimer consented to its communications — and, as a twist, now alleges fraudulent conduct on Mr. Reimer's part. Lacking any evidence to support those claims, Medigap has decided that an old HP laptop computer Mr. Reimer discarded more than a year ago is foundational to its theory of fraud. Mr. Reimer's disposal of the device, according to Medigap, rose to the level of spoliation.

A party that anticipates or is engaged in litigation has a "duty to preserve" only "what [they] know[], or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 496 (E.D. Va. 2011). When Mr. Reimer disposed of his old computer in the summer of 2022, all he knew was that it had ceased to function and no longer served him any purpose. Medigap had not yet informed Mr. Reimer of its litigation-derived theory that he had "engaged in fraud" by using the computer to submit a so-called "opt-in" on the internet — Medigap had instead only stated in April 2022 pre-suit correspondence that someone had somehow supplied it with Mr. Reimer's phone number. ECF No. 48 ("Def.'s Mot.") at 16. Mr. Reimer also was unaware that the "opt-in" Medigap had obtained was provided using a Windows operating system, like the one on his old computer. And because he consistently browsed the internet in "private mode," Mr. Reimer's computer would have contained no browser history even if he had used the device at the time Medigap obtained his

2

contact information. In short, Mr. Reimer had no reason to believe his computer might be relevant to a future lawsuit regarding Medigap's unlawful telemarketing calls.

Medigap's motion for sanctions is premised on the falsehood that Mr. Reimer had a plain obligation to preserve his computer for potential litigation. Because it cannot establish such an obligation, Medigap's allegations of "textbook spoliation" fall flat. *Id.* Medigap also fails to explain why it cannot obtain any relevant information stored on Mr. Reimer's computer from other sources, and proposes drastic, inappropriate, and unwarranted sanctions in an effort to prematurely end this litigation not on the merits, but on wrong-headed spoliation grounds. The Court should deny the motion in full.

**Factual Background**

**A. Because Medigap cannot establish that Mr. Reimer consented to its telemarketing calls, it now seeks to pivot by accusing Mr. Reimer of purposefully destroying material evidence.**

Medigap has made inflammatory and sweeping allegations of fraud by Mr. Reimer from the outset of this litigation. Medigap specifically contends that, in an effort to fabricate his "wrong number" claims, Mr. Reimer used his old computer to "opt in" to Medigap's phone calls by providing his phone number and an incorrect name to a third-party "lead-generator" website that sells contact information to telemarketers like Medigap. *See* ECF No. 25 at 2 (Medigap stating as fact in joint discovery plan that Mr. Reimer "specifically submitted an online opt-in with his phone number under *someone else's* name . . . to manufacture a false narrative").

From the discovery conducted to date, however, it is apparent that Medigap has recklessly oversold its fraud allegations. Medigap has no evidence that Mr. Reimer entered his phone number on the "lead-generator" website; the most it has found is that the "lead" in question was submitted by *someone* or *something* in suburban Chicago — not in northern

3

Virginia, where Mr. Reimer lives — using an internet service provider different than the one Mr. Reimer uses. *See* Exhibit 1 ¶¶ 10-13; ECF No. 48-1 ("Def.'s Exhibits") at 49-50 (displaying geographic location of Medigap's lead). Now, in an effort to save face, Medigap seeks to establish Mr. Reimer's purported fraud not by proof, but by a far-fetched claim of spoliation, alleging that Mr. Reimer "intentionally destroyed his computer to try to conceal his fraudulent scheme." Def.'s Mot. at 18.

As Mr. Reimer intends to establish, the only possible fraud at issue in this litigation occurs within the lead generation and telemarketing industries themselves. It is well known that third parties in the telemarketing lead-generation sector frequently use "bots" and other automated programs to collect personal identifying information from various websites across the internet, and — without the relevant individuals' agreement — then input that information into online "consent forms" and supply it to telemarketers as purported "leads." *See* Exhibit 1 ¶¶ 22, 24, 27-29, 34 ("[T]he purported opt-in is more likely a fabricated sales lead generated fraudulently by a lead generator looking to make a profit . . . . This is an extremely common occurrence in the telemarketing world."). The telemarketers, for their part, use the falsified leads as cover for contacting individuals who have never asked for their calls, alleging "consent" or online "opt-ins." That is evidently what happened here.

Mr. Reimer has testified that he never visited the lead-generator website at issue — called "American Winner's Circle," which prompted users to "answer a few quick questions" and enter a sweepstakes to "get into the winner's circle and take home $50,000," *see* Exhibit 2 — from his old computer or any other device, *see* Exhibit 3 ("Reimer Depo.") at 103:21-23. Mr. Reimer does not know "Rob Kaczmarczyk" and has never used that name as an "alias." *Id.* at 102:15-16; Def.'s Mot. at 6. And Mr. Reimer was at home in Virginia on February 8, 2022 — the date of the

4

alleged opt-in — not in suburban Chicago. Mr. Reimer consented to none of Medigap's communications, nor to those of the telemarketers involved in the other TCPA lawsuits that Medigap complains of, and Medigap knows this. *See* Reimer Depo. at 101:3-103:23 ("Q: Are you the one who submitted your number in these lead forms under Rob Kaczmarczyk's name? A: No.").

### B. Mr. Reimer's old, defective computer had no apparent connection to the telemarketing calls Medigap placed to Mr. Reimer.

The computer that Medigap makes much of in its motion is not nearly as interesting or exciting as Medigap would like it to be. Mr. Reimer owned the computer for many years before getting rid of it, and — as computers tend to do — the device eventually stopped working correctly. By early 2022, the computer had been "difficult to use for quite some time," and was experiencing "lots of freezes" with "[j]ust a blue screen" displaying when Mr. Reimer tried to use it. *Id.* at 44:3, 19-21. The computer began experiencing "long boot-up times" and, eventually, "literally wouldn't start." *Id.* at 44:19-20. In February 2022, when Medigap alleges Mr. Reimer "opted in" to receive its calls online and when Mr. Reimer began receiving those calls, the computer was essentially useless. It sat largely neglected until Mr. Reimer decided to dispose of it, and in the interim, Mr. Reimer used his iPhone (which he still has, and which Medigap expressed interest in inspecting — at least until it chose to file the instant motion) as his primary electronic device. *Id.* at 41:21-42:19, 44:24-45:1.

When the computer was still functional, Mr. Reimer browsed the internet with it in "private mode" — as he currently does on his iPhone and his new laptop. Private browsing mode prevents an internet browser from collecting search histories, "cookies," and other data tracking a user's internet activity. Mr. Reimer uses the feature based on guidance from the federal government that describes it as a means to protect personal privacy, avoid online marketing

5

algorithms, and the like. *See id.* at 53:16-54:1. Because Mr. Reimer uses private browsing, none of his electronic devices retain information on his browsing history, such that — to his knowledge — his old computer would have had retained no records indicating whether or not he visited the American Winner's Circle lead-generator website. *See id.* at 53:4-15, 63:2-12.

For the first half of 2022, Mr. Reimer's old computer was doing little more than collecting dust; eventually, he threw it away when his family was getting rid of other household clutter. *See id.* at 44:24-45:8, 47:8-16. Mr. Reimer did not "destroy" the device, as Medigap repeatedly puts it — he did not wipe its memory or do anything else to damage it, but just put it in the trash "as is." *Id.* at 99:19-24. In short, the old computer had little to do with Mr. Reimer's day-to-day affairs in any capacity, leaving him no reason to see a connection between it and the repeated telemarketing calls he was receiving from Medigap.

## Legal Standard

"Spoliation" refers to "the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). To prove spoliation, "a party must demonstrate that (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a culpable state of mind; and (3) the evidence that was destroyed or altered was relevant to the claim or defenses of the party that sought the discovery of the spoliated evidence." *David v. Summit Cmty. Bank*, 536 F. Supp. 3d 68, 75 (E.D. Va. 2021), *aff'd*, No. 22-1181, 2023 WL 6290736 (4th Cir. Sept. 27, 2023). A party's "obligation" to preserve evidence is central to the spoliation analysis: "To make a finding of spoliation, the court must be satisfied that the party alleged to have spoliated evidence had a 'duty to preserve' relevant evidence, which the party then 'breach[ed] . . . through the destruction or alteration of the evidence.'" *E.I.*

6

*du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 496 (E.D. Va. 2011) (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 521 (D. Md. 2010)).

"[L]itigants are not required to preserve every shred of paper, every e-mail or electronic document, and every back up tape." *David*, 536 F. Supp. 3d at 76. The "duty to preserve" relevant evidence instead requires a party that anticipates litigation to preserve only "what [they] know[], or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request." *Kolon Indus.*, 803 F. Supp. 2d at 496.

A court that makes a finding of spoliation may impose sanctions on the offending party, and while imposing such sanctions is "an inherent power of federal courts," it is also one "limited to that [action] necessary to redress conduct which abuses the judicial process." *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 449 (4th Cir. 2004) (quoting *Silvestri*, 271 F.3d at 590). Under Federal Rule of Civil Procedure 37(e), a party seeking sanctions for the failure to preserve ESI must show not only that the ESI in question "should have been preserved" and "was lost," but also that "the ESI cannot be restored or replaced through additional discovery." *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018) (citing Fed. R. Civ. P. 37(e)). Given that standard, "for the court to issue sanctions, the absence of the [ESI] must be prejudicial to the party alleging spoliation of evidence." *Victor Stanley, Inc.*, 269 F.R.D. at 531. Importantly, Rule 37(e) also specifies that severe sanctions — including "dismiss[ing] the action" or instructing the jury to "presume that the lost information was unfavorable" — are permitted only upon a finding "that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2).

**Argument**

**A.  Mr. Reimer was under no duty to preserve his computer.**

Mr. Reimer had no legal "duty to preserve" his old computer for future litigation when he disposed of it in the summer of 2022, precluding any finding of spoliation. Medigap contends that Mr. Reimer was made aware of its "online opt-in" assertion by its pre-suit correspondence of April 19, 2022, which stated that, "On February 8, 2022, [Mr. Reimer] provided [his] phone number along with a consent for us to contact [him] as part of an online survey." Def.'s Exhibits at 55. But Medigap's letter to Mr. Reimer did not apprise him of Medigap's current fraud allegations, nor did it indicate to Mr. Reimer that his discarded laptop was somehow relevant to this case. To Mr. Reimer, the computer had no appreciable link with Medigap's aggravating and unlawful phone calls. Because Medigap cannot explain why Mr. Reimer should have thought his computer might be relevant, it is likewise unable to establish that he disposed of the device with a "culpable state of mind," *David*, 536 F. Supp. 3d at 75, or acted "intentional[ly] and in bad faith," Def.'s Mot. at 20.

> **1. Mr. Reimer knew he did not submit his contact information online, and was not using his old computer at the time of the alleged "opt-in."**

Medigap focuses on its notice to Mr. Reimer that it obtained his contact information and alleged consent "online," but that information gave Mr. Reimer no reason to think that his unused, dysfunctional computer might be implicated in a lawsuit against Medigap. For starters, Mr. Reimer knew that he never visited the American Winner's Circle lead-generator website, had not filled out a "survey" as Medigap alleged, and had never asked Medigap to contact him. *See* Reimer Depo. at 87:2-13, 87:25-88:4, 103:21-23. Little else would have seemed important to anyone in Mr. Reimer's position — Medigap was repeatedly calling him to sell services that he had not requested, and nothing about the situation should have made Mr. Reimer believe that his

old computer might play a role in establishing that Medigap's calls were violative of state and federal law.

Further, as explained above, Mr. Reimer's computer was essentially inoperable by the time he disposed of it. In the months prior to Medigap's April 2022 letter to Mr. Reimer, the computer was suffering "lots of freezes," "long boot-up times," would display "[j]ust a blue screen," and again, eventually "literally wouldn't start." *Id.* at 44:19-21. Mr. Reimer may well have been able to use the computer a time or two before he finally parted ways with it — and he noted as much in his deposition testimony, which Medigap has seized upon. *See* Def.'s Mot. at 9. But by and large, the computer was obsolete and sat unused. *See* Reimer Depo. at 44:2-10. Even if Mr. Reimer were in the habit of visiting sweepstakes websites and seeking out calls from telemarketers online, he would not have thought his defective computer might come up in future litigation. Perhaps his iPhone that he routinely used at the time (and still has), or other internet-enabled devices — but not the old, neglected computer.

At most, Medigap's April 2022 notice to Mr. Reimer made him aware that Medigap had, somehow, obtained his contact information without his permission. Precisely how that information fell into Medigap's hands was not Mr. Reimer's concern. As Mr. Reimer explained at his deposition:

> Q: Okay. So around this time, April, late April of 2022, you were aware that Medigap was contending that you provided your phone number as part of an online survey, correct?
>
> A: I would say that I must have been made aware by this letter that they were contending that they had my phone number.
>
> Q: Okay. But you were also aware that they were contending that the phone number was provided online, correct?
>
> A: I can say that they have written that here. I can't say that I focused on that or that that's an active part of my memory.

9

*Id.* at 123:14-25, 124:1. Mr. Reimer was, in other words, primarily concerned with Medigap's annoying repeated calls to his personal cell phone, *see id.* at 106:22-24, and had no cause to believe that his old computer was relevant or "reasonably likely to be requested during discovery," *Kolon Indus.*, 803 F. Supp. 2d at 496.

### 2. When he disposed of his computer, Mr. Reimer did not know of Medigap's post-litigation contention that he fraudulently submitted the "opt-in," or that the "opt-in" came from a Windows device.

Medigap's assertion that Mr. Reimer's old computer is "not just relevant but central in this case" turns on its unsupported allegation of fraud — specifically that Mr. Reimer used the computer to visit the American Winner's Circle lead-generator website and there purposefully supplied his phone number with an incorrect name, so as to contrive "wrong number" TCPA lawsuits. Def.'s Mot. at 14. The computer, Medigap explains, would be relevant to establish whether Mr. Reimer did in fact visit that website and supply it with erroneous information, and could have aided Mr. Reimer himself in disproving Medigap's "consent" defense.

Mr. Reimer had absolutely no notice of Medigap's present fraud allegations when he disposed of the computer. Medigap's April 2022 "opt-in" notice letter to Mr. Reimer made no mention of fraud or any other intentional misconduct — to the contrary, it claimed to "understand [Mr. Reimer's] frustration" and "apologize[d] for any inconvenience" caused to him. Def.'s Exhibits at 55. The first suggestion of any "bad faith" on Mr. Reimer's part came roughly a year after he disposed of the computer, in Medigap's June 2023 answer to Mr. Reimer's complaint. ECF No. 15 at 16. Mr. Reimer was therefore without any reason in the summer of 2022 to believe that he might come to need his computer to disprove Medigap's allegations of fraud, which were apparently devised at some later date.

Medigap also claims Mr. Reimer was obliged to preserve his computer — which used the Windows operating system — because it "specifically told [Mr. Reimer] it relied on an opt-in from a computer running Windows." Def.'s Mot. at 13. Medigap's basis for that contention is that it had attached to its April 2022 letter a "TrustedForm" certificate reflecting the information submitted on the American Winner's Circle website, and that certificate notes the end user's operating system as "Windows 10." Def's Exhibits at 50. According to Medigap, the certificate's simple inclusion of the word "Windows" "alone trigger[ed] [Mr. Reimer's] duty to preserve" his own Windows-operated device. Def.'s Mot. at 13.

The trouble with Medigap's "Windows" argument is that Mr. Reimer never saw the "TrustedForm" certificate prior to disposing of his computer. He had reviewed the April 2022 letter itself, which had been sent to his former attorneys, but his counsel had not shared the attached certificate with him. Indeed, he did not see the certificate until Medigap produced it in discovery in this litigation. *See* Reimer Depo. at 143:16-25. Medigap's April 2022 letter, meanwhile, said nothing at all about "Windows" — it was as silent on that matter as it was regarding any allegedly fraudulent conduct. Medigap's reliance on the nature of its fraud allegations and the "Windows" source of Mr. Reimer's contact information thus fails to establish that Mr. Reimer should have seen some association between his old computer and Medigap's phone calls.

### 3. Mr. Reimer had no reason to believe his computer would contain relevant information.

Because Mr. Reimer routinely browses the internet using "private mode" — on his current electronic devices just as he did on his old computer — his devices do not collect information (at least to his knowledge) regarding his browsing history, searches, or other internet activity. Reimer Depo. at 63:6-15 ("I checked my — I checked my devi[c]e for browsing history

11

and didn't find any."). That being so, even if Mr. Reimer's computer had experienced none of the aforementioned technical difficulties; even if he had been actively using the computer in February 2022; and even if he had been made aware of Medigap's fraud allegations by the time he disposed of the computer, he still would not have thought the device contained information relevant to this action.

To the extent that the computer may have retained certain internet browsing information even with "private mode" enabled, such as past IP addresses or hyper-technical data reflective of website visits, Mr. Reimer was unaware. Mr. Reimer is "not a technologist," and as far he was concerned, enabling the private browsing feature meant that no web browsing information at all would exist on any of his internet-enabled devices. *Id.* at 40:5, 63:6-15. With that, Mr. Reimer would not have thought that his computer could be helpful to anyone in establishing whether he visited the American Winner's Circle website.

\* \* \*

Any party seeking sanctions based on the alleged spoliation of evidence must establish, as a preliminary matter, that its opponent was under an "obligation to preserve" the evidence in question. *David*, 536 F. Supp. 3d at 75. Mr. Reimer had no such obligation relative to his old computer, as he had no cause to believe the device could be "relevant to some issue in [his] anticipated case" against Medigap. *Turner*, 736 F.3d at 282. The computer was faulty and sat unused. Mr. Reimer knew he did not give Medigap his contact information online, and knew the computer wouldn't have retained relevant records even if he had. And when Mr. Reimer disposed of the computer, Medigap had yet to reveal its theory of a "fraudulent scheme" perpetrated through the computer. Def.'s Mot. at 18. Mr. Reimer's other TCPA lawsuits identified by Medigap, in which various defendants similarly alleged Mr. Reimer's online "consent," do not change the balance and certainly did not "place[] his computer squarely at

12

issue." *Id.* at 13. No other defendant had requested to inspect Mr. Reimer's computer when he discarded it, and in each case, Mr. Reimer was receiving unsolicited phone calls, knew that he did not give the calling entities permission to contact him, and knew that he certainly did not use his nearly defunct computer to do so. Mr. Reimer's computer is a red herring, and its end-of-life disposal cannot justify an entry of sanctions against him.

### B. The sanctions that Medigap seeks are unavailable in any event.

Under the spoliation standard of Federal Rule of Civil Procedure 37(e), if ESI that "should have been preserved" has indeed been "lost because a party failed to take reasonable steps to preserve it," sanctions may be imposed only if the moving party has suffered some prejudice, in that the information lost "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). That Rule also dictates that extreme sanctions like those Medigap seeks (dismissal of all Mr. Reimer's claims or striking the class allegations from his complaint) are available only upon a showing of "the intent to deprive another party of the information's use." Fed. R. Civ. P. 37(e)(2). Medigap meets neither requirement, and so its motion for sanctions must be denied even if Mr. Reimer had a duty to preserve his computer.

### 1. Medigap can obtain any lost ESI through other means.

In its motion, Medigap assumes that Mr. Reimer's computer contained "critical" ESI that would have been fully supportive of its defenses. Def.'s Mot. at 1 ("Plaintiff destroyed . . . [the] computer, which contained ESI that could have conclusively proved he opted in."). Not only has Medigap failed to explain how or why any information on the defunct computer was "critical" to its theory of the case — it has also failed to explain how the computer's loss prejudiced its ability to obtain that information or why the device's internet browsing-related data is "irretrievable from another source." *Id.* at 14; *see Victor Stanley, Inc.*, 269 F.R.D. at 531 ("[F]or the court to

13

issue sanctions, the absence of the evidence must be prejudicial to the party alleging spoliation of evidence.").

The information that Medigap claims it needed from Mr. Reimer's computer is, essentially, internet browsing history. The device's "historical IP addresses" and data indicating "whether Mr. Reimer utilizes a VPN or IP masking software" are relatively ancillary; what matters is whether Mr. Reimer visited and used the "opt-in" page in question. Def.'s Mot. at 16. And that information should be available from a wide variety of sources.

Medigap does not explain, for instance, why it could not subpoena Mr. Reimer's internet service provider (Verizon) for his internet traffic and search history. *See Davis v. Reliance First Cap., LLC*, No. 7:22-cv-00018, 2022 WL 17085598, at *1 (E.D.N.C. Nov. 18, 2022) (in TCPA action where defendant alleged plaintiff's consent, denying motion to quash subpoena for plaintiff's internet activity). Search engines, too, could likely provide information regarding what websites Mr. Reimer searched for on certain dates. *See Chevron Corp. v. Donziger*, No. 12-mc-80237 CRB (NC), 2013 WL 4536808, at *2 (N.D. Cal. Aug. 22, 2013) (concerning subpoenas to Google seeking IP address information and internet usage data associated with particular Gmail addresses). Medigap could also serve subpoenas on the web hosting service(s) that have hosted the American Winner's Circle website, seeking visitor data from a defined time period.

Internet activity does not take place in a vacuum — it leaves the user's digital fingerprints with entities across the web that meticulously record user data, and Medigap offers no explanation for why it cannot seek Mr. Reimer's data from those entities. Without such an explanation, Medigap cannot claim that Mr. Reimer's actions in getting rid of his computer "abuse[d] the judicial process," *Hodge* 360 F.3d at 449, or that they left Medigap "irreparably prejudiced," Def.'s Mot. at 17. And without a showing of prejudice, Medigap cannot obtain

14

spoliation sanctions against Mr. Reimer. *See Steves & Sons, Inc.*, 327 F.R.D. at 109 (explaining that, under Rule 37(e), party "must show that it made some good-faith attempt to explore its alternatives [for replacing or restoring lost ESI] before pursuing spoliation sanctions").

### 2. Medigap's proposed sanctions are drastic, inappropriate, and unwarranted.

As explained above, no sanctions against Mr. Reimer are appropriate — let alone the extreme ones proposed by Medigap. "Imposing a sanction that terminates a case is 'severe,'" and will be justified "only in circumstances of bad faith or other 'like action.'" *Kolon Indus.*, 803 F. Supp. 2d at 500 (quoting *Silvestri*, 271 F.3d at 593 (concluding that sanction of dismissal is appropriate only "if the prejudice to the defendant is extraordinary")); *see also Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 518-19 (D. Md. 2009) ("[C]ourts should impose sanctions that dispose of a case only in the most egregious circumstances."). Again, under Rule 37(e)(2), "dismiss[ing] the action" or even "instruct[ing] the jury that it may or must presume the information was unfavorable to the party" is permissible as a sanction "only upon finding that the party acted with the intent to deprive another party of the information's use."

Medigap has proven no "intent to deprive" it of relevant information on Mr. Reimer's part, let alone "circumstances of bad faith." Fed. R. Civ. P. 37(e)(2); *Kolon Indus.*, 803 F. Supp. 2d at 500. As previously explained, Mr. Reimer disposed of his old computer because it had deteriorated to a point of inoperability — not as part of a nefarious scheme to obstruct Medigap's access to relevant evidence. Medigap's request for Mr. Reimer's class allegations to be stricken from his complaint is rooted in the same theory of bad-faith conduct — that because Mr. Reimer is "evasive, untruthful, [and] lack[s] credibility," he cannot serve as an adequate class representative. Def.'s Mot. at 20. Again, Medigap has failed to show that Mr. Reimer is the bad actor it would like him to be, and its proposed sanctions are out of line with the facts at hand.

15

Medigap's bid to have the entirety of Mr. Reimer's case dismissed is also inappropriate because its "consent" and "opt-in" allegations do not reach all of Mr. Reimer's claims. Relative to Counts I and II of his complaint, for instance, Mr. Reimer alleges that, after receiving multiple telemarketing calls from Medigap, he expressly asked for the calls to stop — thus revoking any preexisting "consent" he may have given — and, nevertheless, the calls continued. *See* ECF No. 1 ¶¶ 34-44 (Mr. Reimer telling a Medigap agent "No, no more calls," followed by more calls). Mr. Reimer also alleges in Count IV that Medigap's agents failed to identify themselves by first and last name when calling him — a contention divorced from any matters relating to "consent" — in contravention of Virginia state law. *See id.* ¶¶ 111-115. In brief, Medigap's proposed sanctions are overbroad and not legally justifiable in these circumstances; indeed, no sanctions at all should be entered against Mr. Reimer.

## Conclusion

Despite listing his phone number on the National Do Not Call Registry, Mr. Reimer has — like countless others before him — been subjected to repeated and uninvited telemarketing calls from Medigap. This litigation represents Mr. Reimer's effort to enforce his rights not to receive those calls. Now, in its motion for spoliation sanctions, Medigap goes to great lengths to illustrate Mr. Reimer's "intentional and unjustifiable," "egregious," "bad-faith," "fraudulent behavior"; to cast Mr. Reimer as a duplicitous "sophisticated serial litigant"; and to ask this Court to set aside Medigap's own unlawful conduct. Def's Mot. at 2, 17, 18. This Court should decline the invitation. Mr. Reimer was under no duty to preserve his old and unused computer, which had no discernible connection to Medigap's telemarketing calls when Mr. Reimer disposed of it in the summer of 2022. That matter alone precludes the entry of any sanctions against Mr. Reimer. Yet Medigap also fails to explain why it cannot obtain the purportedly spoliated evidence from other sources, and, looking past that deficiency in its motion, seeks

extreme sanctions that are out of step with the misconduct alleged. Medigap's motion says much but proves little, and Mr. Reimer respectfully requests this Court to deny it.

Dated: October 16, 2023

Respectfully submitted,

*/s/ Gregory Y. Porter*_____
Gregory Y. Porter (VA Bar No. 40408)
John W. Barrett (admitted *Pro Hac Vice*)
West Virginia Bar No. 7289
Panida A. Anderson (admitted *Pro Hac Vice*)
D.C. Bar No. 90009667
BAILEY & GLASSER LLP
1055 Thomas Jefferson St. NW, Suite 540
Washington, DC 20007
Telephone: 202.548.7790
Facsimile: 202.463.2103
GPorter@baileyglasser.com
JBarrett@baileyglasser.com
PAnderson@baileyglasser.com

James Lincoln Wolfe (admitted *pro hac vice)*
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: 304.345.6555
Facsimile: 304.342.1110
LWolfe@baileyglasser.com

William "Billy" Peerce Howard, Esq.
 (admitted *Pro Hac Vice)*
Florida Bar No.: 0103330
Amanda J. Allen, Esquire
(admitted *Pro Hac Vice)*
Florida Bar No.: 98228
THE CONSUMER PROTECTION FIRM, PLLC
401 East Jackson Street, Suite 2340
Tampa, Florida 33602
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Billy@TheConsumerProtectionFirm.com
Amanda@TheConsumerProtectionFirm.com

*Counsel for Plaintiff Ruhi Reimer*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2023, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Ryan D. Watstein
Matthew A. Keilson
WATSTEIN TEREPKA LLP
1055 Howell Mill Road, 8th Floor
Atlanta, Georgia 30318
ryan@wtlaw.com
mkeilson@wtlaw.com

Attison L. Barnes, III
WILEY REIN LLP
2050 M St. NW
Washington, DC 20036
abarnes@wiley.law


By: */s/ Gregory Y. Porter*